And counsel may begin whenever they're ready. And also, we do have your 28J letter. Thank you. Christopher Stender for the petitioner. Good morning. This case we would present it as a question of prosecutorial discretion, and the fact that the memo issued by Chief Immigration Judge infringed upon the Immigration Service's prosecutorial discretion whether or not to file in order to show cause. We're not asking the Court to review whether the Attorney General's decision whether and when to commence deportation proceedings is reviewable or should be called into question by this Court. This is a distinction that we wish to make. We think the prior court cases in Jimenez-Angeles and Cortez-Felipe, therefore, are distinguishable. The memo issued by Chief Judge Crepy infringed or restricted the INS's prosecutorial discretion to not only issue the order to show cause, but then to decide when to file it. There is nothing in the transitional rules of IRA, the Illegal Immigration Reform and Immigration Responsibility Act of 1996, which prohibited the filing of an order to show cause after April 1, 1997. However, the Crepy memo had a chilling effect. It was an announcement by the Chief Judge that orders to show cause would not be accepted, even if the then Immigration Service chose to file those orders to show cause with the Immigration Court. We would put forth that Judge Crepy's memo as a violation of the Administrative Procedures Act because it was legislative rulemaking without notice and comment as required by the Administrative Procedures Act. What is it about the memo, in your view, that makes it a rule as distinct from some other type of interpretation or recommendation or guideline? The courts have recognized that a critical factor on that issue is the extent to which the memo would have left to the agency or  It's also important to note that the Crepy memo did not say that any order to show cause in individual cases. The Crepy memo did not. It said as a class, any order to show cause anywhere in the United States would not be accepted effective April 1, 1997. This was not required by IRA. This was not required by regulation. There is no requirement other than the Crepy memo. It was issued on the same date and time, six days prior to April 1, 1997, announcing to the Immigration Service that orders to show cause will not be accepted as of April 1, 1997. There is no requirement anywhere in the statute, anywhere in the regulation, anywhere other than the Crepy memo. The government had discretion to choose to go forward under the immigration law as it existed prior to the issuance of IRA of April 1, 1997, but the Crepy memo prevented that. The chief judge interfered with that choice of the government whether or not to proceed. At that point, the government was left with no other option but to proceed under the IRA and the changes, and those changes were substantial, which affected applicants. Wasn't the letter by the chief judge merely to alert the various people that had jurisdiction in this matter to be aware that within one week the letter would change and they would move in a different direction? It wasn't for the purpose of telling them that the law had changed, but just to advise them. The letter is merely a memorandum. It's not a law. It's not a regulation of any kind. And I think they were free to choose if they should do so, in other words, go back to the rule to show cause rather than use this method. Or am I saying it wrong? Well, respectfully, I would disagree with that. The memo does not leave any discretion to the immigration court officers. In fact, in an interesting passage, there was a system in place where the government could even schedule hearings with the immigration courts, and it was told to the immigration courts that they would have to delete that and that those actions would be dismissed, even if it was already scheduled in their computer system. So there was absolutely no discretion left by the CREPI memo. And, again, I reiterate that there is no requirement that orders to show cause not be accepted after April 1st, except for the CREPI memo, which is issued by the chief judge of the immigration court. It has nothing to do with a distinct agency from the then immigration and acquisitions court. Well, I think the question may not be so much the wording of the memo, but whether anybody was actually required to follow it. In other words, the memo said this is what I think should happen. And it is not iffy. It just says this is what I think should happen. But the question is whether anybody was bound by that or not. Were people free to ignore it and do their own interpretation and say, well, that's interesting that he thinks that, but I think it's another two weeks after that? Well, no, and that's a critical factor, which I touched upon earlier. There was absolutely no discretion left to the immigration courts to accept them. They were rejected. And, in fact, if they were erroneously accepted, they were dismissed and terminated as null and void ab initio. There was no discretion left to the immigration courts to accept those filings after April 1st, 1997. And I would also point out that there was a chilling effect. The immigration service received the memo and knew they couldn't even try to file these orders to show cause after April 1st, 1997. I think that's the distinguishing factor. It is rulemaking because there was no discretion to those immigration court officials to accept the filing after April 1st, 1997. Do you see? I'm sorry. No, go ahead. Well, I'm just wondering what kind of other than the fact that he told people that this is what he wanted to have happen, how we know that everybody did it or that everybody had to do it? Well, I would put forth in this case, and the government's brief seems to say, well, there's some conjecture. Perhaps they wouldn't they would have elected not to file the order to show cause in any case and proceed under an NTA. If you read the memo, it's absolute. There is no ability to vest that jurisdiction. The regulations provide under ACFR 3.14 that proceedings commence upon the filing of the charging document, whether it's an order to show cause or an NTA. There was no ability to commence, to begin jurisdiction in an immigration court with an order to show cause after April 1st, 1997 because of the creppy memo. That's the only thing that stopped the government from filing. And there were hundreds of orders to show cause which were dismissed out of hand based on the memo. Immigration judges cited the chief judge memo and dismissed the charges. So, in fact, there are cases where the government attempted to file after April 1st, 1997, and they were rejected based on the memo, not because of the rule or anybody said, you know, you better do this or else. It was memo. They could have rejected that and done as they pleased because they weren't bound by that simply because, as you keep saying, it's a memo. I look upon it in that fashion also when I read it, that it was a memo. Nobody had to follow it. They didn't say, you know, you're on pain of death that you have to follow this edict that we've handed down. It's really just a memo. Well, but what the memo directs is that you shall not accept. Okay. And it's absolute. It is a memo which memorializes the fact that no charging documents will be accepted after April 1st, 1997. It's not interpretive of anything in IRA. It's not explaining something. It doesn't interpret a law or regulation. It makes a law or regulation, even though it's in memo form. But still, it has that absolute effect. And there's no questions. I'd like to reserve some time for rebuttal. You may do that. Thank you.  May it please the Court, my name is Jonathan Cohn, and I represent the Attorney General, John Ashcroft. Your Honors, this Court has repeatedly held that ARERA applies whereas here the charging document was filed after ARERA's effective date. Because of this controlling authority and because the regulations plainly established that filing, not service, is the operative event, Petitioner is subject to ARERA's requirements for cancellation of removal. And filing occurred when in this case? The filing in this case occurred after ARERA's effective date. When did the filing occur in this case? What date? It occurred on August 2nd, 19 – I'm sorry, that's Navarro. It occurred on April 23rd, 1997, 22 days after the effective date. Moreover, Petitioner's APA claim in this case is a pure red herring. The memorandum in question is not a rule because it does not erect any legal requirements. It's just a memo, as you pointed out. But even if it were a rule, and even if it did require notice and comment rulemaking, a decision that the memorandum is invalid would not help Petitioner here because this Court's decisions would still hold that Petitioner is subject to ARERA irrespective of whether the memorandum is valid. I would like to address these issues in turn. What was it in your view in this record that caused the filing to be on April 23rd instead of some earlier date before the beginning of April? That's the question of prosecutorial discretion, which this Court has held in Jimenez is unreviewable. Well, I'm asking a factual question, not a legal question. Is there anything in the record that tells us what went into that exercise of discretion in this case? No, Your Honor. There's nothing in the record. So we just know that it was filed on April 23rd? That's correct, Your Honor. And the facts of this case are nearly identical to Cortez-Philippe, in which, like in this case, you had the service of an order to show cause before the effective date, but no filing. You had the filing only after the effective date, the exact same thing you have here. And this Court held that ARERA applies, not the old rules, but the new rules of cancellation of removal. That's exactly what you have here. And the decision of Cortez-Philippe was not based upon the memorandum. The memorandum was never cited at all in Cortez-Philippe. Rather, the decision was based upon the plain language of the regulations, namely Section 3.14a, HCFR 3.14a, which provides that proceedings before an immigration judge commence when a charging document is filed, not served but filed. Cortez-Philippe has been followed by this Court numerous times. In Jimenez, in Vasquez, in Armendariz Montoya, these decisions all make clear that it's the filing, not the service, of the charging document that commences proceedings. So the mere fact there was a service of an order to show cause in this case is irrelevant. All that matters is that the charging document was filed after ARERA's effective  Now, Petitioner contends that there's a the prosecutorial discretion was somehow infringed in this case. This is a bizarre argument for a number of reasons. But first of all, the memorandum in question was not even issued to the prosecutors. It was issued to immigration judges, court administrators and court staff. Now, as to those folks, it certainly feels like a directive. It feels like something that's not discretionary as to the recipients of the memo. Do you agree or disagree with that? I think the memo is summarizing requirements, requirements set by statute and by regulation. That wasn't exactly my question. Would the recipients of this, let's say another immigration judge, be bound to No, Your Honor. The recipients were bound to follow the statutes and regulations which this memo summarizes. But this memo is akin to one Federal judge summarizing a new statute or a new regulation and passing a summary on to another Federal judge. It's not the memorandum that binds the Federal judges. It's the underlying statute and regulations. Well, that's not quite correct, it seems to me, because, for example, it says on or after April 1st, the Executive Office for Immigration Review will not accept OSCs, et cetera, for filing. So it's also an announcement of something that they intend to do. Sure, Your Honor. That's also compelled by the statute. ARERA Section 308b-6 eliminated the former Section 1252b-a-1, which provided statutory authority for OSCs. The new charging document after ARERA is not the OSC, the order to show cause, but the notice to appear. So your point, I take it, is that it doesn't matter what you call this memo because it doesn't do anything that the statute and formal regulations didn't already do. That's exactly right, Your Honor. And even if you could somehow say Petitioner had a right to have an OSC being filed as opposed to an NTA, that's a nonissue because the charging document would still be filed after the effective date. So even if you could file the old document as opposed to the new document, who cares? It's still being filed after the effective date. So under Cortez-Philippe and its progeny, you'd still be subject to ARERA. It doesn't matter what charging document you would file. You couldn't file OSCs, but even if you could, you would still get the new rules because it's being filed after the effective date. In addition to Regulation 3.14a, there are others that make clear that proceedings commence upon the filing. And it's these regulations that decide the issue, not the memorandum. The Court might also want to take a look at 8 CFR 1239.1, which provides that every removal proceeding conducted under Section 240 of the Act, which this is, is commenced by the filing of a notice to appear with the Immigration Court. This regulation was also cited in the cases I mentioned, Cortez-Philippe, Jimenez, Vasquez, Armendariz, Montoya. All these cases make clear that they're basing their decision on the regulations, not the memorandum, and the regulations provide that it's the filing, not the service, of the charging document. The memorandum in this case was completely irrelevant. The immigration judge didn't even cite the memorandum in reaching his decision. Rather, he cited that regulation I mentioned earlier, 3.14a. That was the basis of his decision that ARERA applies. That regulation, as noted, provides that proceedings are commenced upon the filing of the charging document. That was the basis of the decision here, not the memorandum. The memorandum simply summarizes the law. Because the memorandum simply summarizes the law, it's not a rule. But again, even if it were a rule, and even if it required notice in common rulemaking, that's really irrelevant. This Court could even assume arguendo that the memorandum is invalid. It just wouldn't matter because the statutes and the regulations and this Court's decisions dictate the same result. But, counsel, having the imprimatur of the chief judge, don't you think that the people serving under him would take that a lot more seriously than if somebody else just wrote that to them as a memo? Perhaps. But even regardless of that memo, they still have to follow the statutes and the regulations. They would take those documents seriously as well because they have to. They're bound by them. But again, the argument that he made here is one of prosecutorial discretion. And this memorandum didn't even go to the prosecutors. It rather went to the immigration judges and the court administrators and the court staff. So his argument does not even hold up on those grounds. Your Honors, there are basically three reasons why this case should be affirmed. First of all, this Court's precedents, including Cortez-Philippe, dictate the result that ARERA applies. Second of all, the regulations themselves are unambiguous and provide that it's the filing, not the service of the charging document. That's the operative event. And third, even if you assume arguendo that this memorandum is a rule that acquired  would still dictate the result. This is not a rule of the memorandum, but it really doesn't matter because Cortez-Philippe and the regulations at site still dictate the result here. ARERA applies because the charging document was filed after ARERA's effective date. And under ARERA, you have a new standard for cancellation of removal, a standard which Petitioner admits she cannot satisfy. If this Court has no further questions, I'd be glad to take a seat. Judge Hall, do you have any questions? I do. Okay. Thank you very much. And you have some rebuttal time remaining. I think the point that I'd like to draw the Court's attention to is that the three cases cited by Mr. Cohn are not at all on point. Cortez-Philippe, Armendariz-Montoya, Jimenez-Angeles, every litigant said Immigration Service had an obligation to start my hearing prior to April 1, 1997. We're not arguing that. We're arguing that after April 1, 1997, proceedings could have been commenced with the filing of an order to show cause, but for the Judge Crepy memo. That's a distinction. We're not asking the Court to review the prosecutorial discretion of the Immigration Service to start proceedings or to commence proceedings. We're saying that the Crepy memo prohibited the filing of an order to show cause. And I heard mention of statutes, regulations and case law which require that IHRA be applied to filings after April 1, 1997, but respectfully, it does not say that. It says if a notice to appear is filed after April 1, 1997, then IHRA will apply to the case. What's your response to the argument that the statute, though, had done away with the animal called order to show cause altogether? Well, respectfully, it doesn't say that. It says if you file a notice to appear on April 1st, we will apply the new law. It doesn't say you may not file an order to show cause. It does not say that. Did that exist anymore? Right, under the new statute. Did that even exist? Well, it – there's nothing there. There is a void. And that's why I think Judge Crepy issued the memo. There was a gap, a void out there, what to do with these charging documents that were issued that were not filed. And just quickly, if I could go back to Judge Crepy's memo, it does state that there will be no exceptions to the filing deadline. And it says that on April 1, 1997, that any orders to show cause will be, quote, locked out and rejected by the system. And if received, they must be returned as untimely files to INS and rejected. There's no discretion to accept it. Thank you. Thank you, counsel. The case just argued is submitted. And we'll next hear argument from the same two attorneys in DeLaVega-Navarro v. Ashcroft.
judges: Hall, Graber, Weiner